# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

June 15, 2016

Lyle W. Cayce
Clerk

No. 15-20237

RICARDO SALAZAR-LIMON, Individually and as Next Friend of EFS,

Plaintiff - Appellant

v.

CITY OF HOUSTON; CHRIS C. THOMPSON,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before REAVLEY, JOLLY, and ELROD, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Ricardo Salazar-Limon ("Salazar") appeals the judgment dismissing his 42 U.S.C. § 1983 claims, which alleged that Officer Chris C. Thompson of the Houston Police Department ("HPD"), in Houston, Texas, applied excessive and unreasonable deadly force during his arrest, causing Salazar to be partially paralyzed. Salazar also asserted a claim, under *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978), against the City of Houston based on the same conduct and injuries. The district court granted qualified immunity to Officer Thompson in his individual capacity (finding that Salazar's constitutional rights had not been violated during the arrest) and also denied Salazar's claims under *Monell*. Salazar appealed. We AFFIRM.

No. 15-20237

I.

In reviewing an appeal from a summary judgment, we "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *See Deville v. Marcantel*, 567 F.3d 156, 163–64 (5th Cir. 2009).

On October 29, 2010, around midnight, Salazar was driving on Houston's Southwest Freeway. Three other men were in his truck. Salazar had drunk at least four or five beers in the previous two hours—and had the remainder of the 12–pack with him in the truck.

Officer Thompson observed Salazar's truck weaving between lanes and speeding in excess of the posted limit. In response, Officer Thompson turned on his lights and sirens, and Salazar pulled over on the right shoulder of the elevated overpass, next to a low retaining wall. About two feet separated the freeway wall from the passenger side of Salazar's truck. Officer Thompson parked his patrol car about four feet behind Salazar's truck. Before getting out of the patrol car, Officer Thompson ran a search on Salazar's license plate to see if the truck was stolen; it was not.

Officer Thompson approached the driver's window of Salazar's truck and asked Salazar for his license and proof of insurance. Lacking a U.S. license, Salazar complied by giving Officer Thompson his Mexican driver's license. Officer Thompson returned to his patrol car and checked the driver's license, which showed Salazar had no open warrants or charges pending against him. Officer Thompson then returned to the driver's window of Salazar's truck, asking Salazar to step out. Salazar complied, walked to the back of his truck, and stood next to Officer Thompson in the space between the back of the truck and the front of the patrol car.

Officer Thompson and Salazar dispute certain details of what happened next, but it is undisputed that: 1) Officer Thompson tried to handcuff Salazar;

No. 15-20237

2) Salazar resisted; 3) a brief struggle ensued (in which neither party was injured);[1] and 4) after the brief struggle, Salazar pulled away, turned his back to Officer Thompson, and walked away along the retaining wall and the passenger side of his truck.

At this point, Officer Thompson pulled out his handgun and ordered Salazar to stop. Salazar did not immediately comply and took "one or two" more steps. Officer Thompson testified he then saw Salazar turn left and reach toward his waistband, which was covered by an untucked shirt that hung below his waist.[2] Further, Officer Thompson testified that he perceived the combination of Salazar's actions to be consistent with a suspect retrieving a weapon from his waistband. Officer Thompson fired a single shot, hitting Salazar in the right lower back.

Upon inspection, Officer Thompson determined that Salazar was not armed. Salazar survived, but the gunshot wound left him partially paralyzed.

Salazar was charged with, and pleaded nolo contendere to, resisting arrest and driving while intoxicated.

In Texas state court, Salazar sued Officer Thompson, the City of Houston, and various HPD officials, alleging constitutional and state-law violations. The defendants timely removed the case. Salazar dismissed his claims against all of the HPD officers, except Officer Thompson. Officer Thompson moved for summary judgment, asserting qualified immunity. The

---

[1] Salazar contends in his briefing that he did not "struggle" with Officer Thompson at any point. Salazar alleged in his complaint, however, that he had a "brief struggle" with Officer Thompson after Officer Thompson pulled out his handcuffs. Salazar was convicted on his nolo contendere plea to resisting arrest. The charging instrument alleged that Salazar "push[ed] [Officer Thompson] with his hand."

[2] Salazar disputes the direction of the turn, or indeed that he was turning at all at the time he was shot. This factual dispute does not preclude summary judgment for the reasons noted infra.

3

No. 15-20237

City of Houston moved for summary judgment, asserting Salazar's failure to sufficiently plead *Monell* liability as a matter of law.

Addressing Salazar's Fourth Amendment claims against Officer Thompson, the district court determined that "Salazar [] pointed to no summary judgment evidence contradicting Thompson's testimony that he shot because, when Salazar reached for his waistband and turned toward him, he believed that Salazar had a gun and would shoot." *Salazar-Limon v. City of Houston*, 97 F. Supp. 3d 898, 909 (S.D. Tex. 2015). The district court thus concluded that Officer Thompson's use of deadly force was not excessive under the circumstances and that Salazar's constitutional rights were not violated, and accordingly granted qualified immunity to Officer Thompson, dismissing the claims against him. *See id.*

Turning to Salazar's *Monell* claims against the City of Houston, the district court granted the City of Houston's summary judgment motion based on the insufficiency of Salazar's claims as a matter of law. Specifically, the district court denied Salazar's *Monell* claims because the "constitutional violation of a municipal official is a prerequisite to municipal liability," and Salazar "ha[d] not raised a factual dispute material to determining whether [his] *constitutional rights* were violated." *Id.* at 910 (emphasis added) (citations omitted). Thus, "[w]ithout an underlying [constitutional] violation," the district court held, "the § 1983 claims against the municipality fail." *Id.*

Salazar appealed to this Court, arguing that the district court erred in granting Officer Thompson and the City of Houston's motions because genuinely disputed material facts precluded summary judgment. Accordingly, Salazar argues that the district court's grant of summary judgment was error

No. 15-20237

and that the judgment should be reversed and remanded for trial against Officer Thompson and the City of Houston.[3]

## II.

We review the district court's grant of summary judgment de novo, also applying the same standards as the district court. *See Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012). Summary judgment is only appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "On a motion for summary judgment, [we] must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Deville v. Marcantel*, 567 F.3d 156, 163–64 (5th Cir. 2009). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.

To establish a claim under § 1983, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1935 (2014). Additionally, "[c]laims under § 1983 may be brought against persons in their individual or official capacity, or against a governmental entity." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009)).

---

[3] Salazar does not appeal the district court's dismissal of his other federal (conspiracy) and state-law (negligence against Officer Thompson in his official capacity, negligence against the City of Houston, and loss of consortium) claims.

No. 15-20237

A municipality and/or its policymakers may be held liable under § 1983 "when execution of a government's policy or custom . . . by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury. . . ." *Monell*, 436 U.S. at 694; *see also Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (requiring plaintiffs asserting *Monell*-liability claims to show "(1) an official policy (2) promulgated by the municipal policymaker (3) [that was also] the moving force behind the violation of a constitutional right").

A.

First, we turn to Salazar's claims against Officer Thompson. Salazar contends that the district court erred by resolving disputed issues of material fact, and on that basis, by granting Officer Thompson qualified immunity, holding that Officer Thompson did not use excessive or unreasonable force in Salazar's arrest.

Because Officer Thompson was sued in his individual capacity, he asserted the defense of qualified immunity. *See Goodman*, 571 F.3d at 395; *Salazar-Limon*, 97 F. Supp. 3d at 900. When evaluating a qualified immunity defense, we conduct a "well-known" two-prong inquiry. *Bazan ex rel. Bazan v. Hidalgo Cty.*, 246 F.3d 481, 490 (5th Cir. 2001). "In order to overcome a qualified immunity defense, a plaintiff must allege a violation of a constitutional right, and then must show that 'the right was clearly established . . . in light of the specific context of the case.'" *Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Thus, "[a]t summary judgment, it is the plaintiff's burden to rebut a claim of qualified immunity once the defendant has properly raised it in good faith." *Cole v. Carson*, 802 F.3d 752, 757 (5th Cir. 2015). And, "[t]his is a *demanding standard*." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1517 (2016) (emphasis added). "Put simply,

qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Moreover, "[t]his burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citations omitted). And, although "[w]e resolve factual controversies in favor of the nonmoving party," we do so only "when there is an *actual controversy*, that is, when both parties have submitted evidence of contradictory facts." *Id.* (emphasis added). Accordingly, we do not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts" to survive summary judgment. *Id.* (citing *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990)).

Turning to the constitutional claim here, Salazar contends that Officer Thompson violated his Fourth Amendment rights by applying excessive force during his arrest.

To establish a claim of excessive force under the Fourth Amendment, Salazar "must demonstrate: '(1) [an] injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Deville*, 567 F.3d at 167 (quoting *Tarver v. City of Edna,* 410 F.3d 745, 751 (5th Cir. 2005)). "Excessive force claims are necessarily fact-intensive." *Id.*

"The '[u]se of deadly force is not unreasonable when an officer would have reason to believe the suspect poses a threat of serious harm to the officer or others.'" *Carnaby v. City of Houston*, 636 F.3d 183, 188 (5th Cir. 2011) (quoting *Mace v. City of Palestine*, 333 F.3d 621, 624 (5th Cir. 2003)). And, this "inquiry is confined to whether the [officer or another person] was in danger *at*

*the moment of the threat* that resulted in the [officer's use of deadly force]." *Rockwell v. Brown*, 664 F.3d 985, 993 (5th Cir. 2011) (citation omitted).

Salazar contends that the district court erred because it resolved disputed issues of material fact in Officer Thompson's favor. Specifically, Salazar asserts that the district court erred by finding that: 1) the highway was dimly lit; 2) Officer Thompson adequately warned Salazar prior to the shooting; 3) Salazar turned sharply towards Thompson; and 4) Salazar reached for his waistband, making threatening movements with his hands.

Of the four issues, only one need be addressed—whether Salazar reached for his waistband before being shot. Unless Salazar has presented competent summary judgment evidence that he did not reach toward his waistband (for what Officer Thompson perceived to be a weapon), Officer Thompson's decision to shoot was not a use of unreasonable or excessive deadly force.[4]

Here, the record evidence shows that Officer Thompson testified that: 1) he saw Salazar reach for his waistband; 2) his view of Salazar's waistband was obscured (either by Salazar's low-hanging shirt, the angle at which Salazar turned, or some combination of the two); and 3) he perceived Salazar's movements to be consistent with those of an arrestee reaching for a concealed weapon. In the proceedings before the district court, however, Salazar did not

---

[4] *See Deville*, 567 F.3d at 167 (we must "consider . . . 'the severity of the crime at issue, whether the suspect poses an *immediate threat* to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'") (emphasis added) (citing *Graham*, 490 U.S. at 396); *Carnaby*, 636 F.3d at 188 ("The '[u]se of deadly force is not unreasonable when an officer would have reason to believe the suspect poses a threat of serious harm to the officer or others.'") (citation omitted); *Rockwell*, 664 F.3d at 993 ("The excessive force inquiry is confined to whether the [officer or another person] was in danger *at the moment of the threat* that resulted in the [officer's use of deadly force].") (citation omitted); *Manis v. Lawson*, 585 F.3d 839, 844 (5th Cir. 2009) ("This court has found an officer's use of deadly force to be reasonable when a suspect moves out of the officer's line of sight such that the officer could reasonably believe the suspect was reaching for a weapon.") (citations omitted); *see also Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 385 (5th Cir. 2009); *Reese v. Anderson*, 926 F.2d 494, 501 (5th Cir. 1991); *Young v. City of Killeen, TX*, 775 F.2d 1349, 1352–53 (5th Cir. 1985).

deny reaching for his waistband;[5] nor has he submitted any other controverting evidence in this regard. To the point, Salazar has not presented *any* competent summary judgment evidence to controvert or challenge Officer Thompson's testimony noted above. And, in the absence of such controverting evidence, we cannot assume that Salazar "could or would prove the necessary facts" to survive summary judgment. *Little*, 37 F.3d at 1075 (citing *Lujan*, 497 U.S. at 888).

Thus, based on our precedent and the undisputed facts, considering the totality of the circumstances—which include Salazar's resistance, intoxication, his disregard for Officer Thompson's orders, the threat he and the other three men in his truck posed while unrestrained, and Salazar's actions leading up to the shooting (including suddenly *reaching towards his waistband*)—it seems clear that it was not unreasonable for an officer in Officer Thompson's position to perceive Salazar's actions to be an *immediate* threat to his safety.[6] And, it follows that it was not "clearly excessive" or "unreasonable" for Officer Thompson to use deadly force in the manner he did to protect himself in such circumstances.[7]

---

[5] *See Salazar-Limon*, 97 F. Supp. 3d at 906 ("uncontroverted record evidence shows that Salazar . . . reached for his waistband before Thompson fired"); *id.* at 906–07 ("undisputed summary judgment evidence shows that: . . . as [Salazar] walked away from Officer Thompson toward his own truck, he reached toward his waistband").

[6] Furthermore, we note that, in the context of the facts of this case, it is immaterial whether Salazar turned left, right, or at all before being shot. Specifically, we have never required officers to wait until a defendant turns towards them, with weapon in hand, before applying deadly force to ensure their safety. *See, e.g.*, *Manis*, 585 F.3d at 844 ("This court has found an officer's use of deadly force to be reasonable when a suspect moves out of the officer's line of sight such that the officer could reasonably believe the suspect was reaching for a weapon." (collecting cases)); *Mendez v. Poitevent*, No. 15-50790, ___ F.3d ___, 2016 WL 2957851 at * (May 19, 2016) (qualified immunity applies to shooting of fleeing suspect who had physically clashed with officer leaving officer disoriented and with impaired vision); *Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir. 1997) (qualified immunity applies to shooting without warning after suspect struggled with two officers knocking them to the ground while resisting arrest).

[7] *See* cases cited *supra* note 5.

No. 15-20237

Accordingly, we agree with the district court that Salazar's constitutional rights were not violated; and, we hold that the district court did not err in granting Officer Thompson qualified immunity.

B.

We next turn to Salazar's claims against the City of Houston. Salazar asserts three theories of municipal liability under *Monell*: 1) unofficial policy, custom or practice for failure to discipline; 2) unofficial policy, custom or practice for failure to train and/or supervise; and 3) ratification.[8]

Because Salazar has not shown a violation of his constitutional rights, however, all of his *Monell* claims against the City of Houston fail as a matter of law. *See Peterson*, 588 F.3d at 847 (requiring plaintiffs asserting *Monell*-liability claims to show "(1) an official policy (2) promulgated by the municipal policymaker (3) [that was also] the moving force behind the *violation of a constitutional right*") (emphasis added).

IV.

In sum, the record evidence, read in the light most favorable to Salazar, does not show that his Fourth Amendment rights were violated. Thus, the district court's judgment is, in all respects

AFFIRMED.

---

[8] Salazar also argues that the HPD use of force policy is "facially deficient" because it uses the term "imminent threat," as opposed to "immediate threat." *See Deville*, 567 F.3d at 167 ("whether the suspect poses an immediate threat to the safety of the officers or others") (citing *Graham*, 490 U.S. at 396). In short, this argument is meritless as municipalities are not required to incorporate specific language from our case law, or that of the Supreme Court, in order to satisfy *Monell*.