## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 7, 2020

Lyle W. Cayce
Clerk

No. 19-20056

JUSTIN NOVICK; CHRIS KEHN; JAMES ABRAHAM; CHARLES BETHAS,

Plaintiffs - Appellees

v.

SHIPCOM WIRELESS, INCORPORATED,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, SMITH, and COSTA, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This appeal is from a judgment after a jury trial in which Shipcom Wireless was found to have misclassified the Plaintiffs, its former employees, as exempt from the overtime requirements of the Federal Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. The Plaintiffs were awarded both actual and liquidated damages for unpaid overtime. On appeal, Shipcom argues that the trial court abused its discretion in two respects. First, Shipcom argues that the court erroneously denied its motion to present opening and closing arguments. Second, Shipcom argues that the court erred in admitting evidence of an internal audit that led Shipcom to reclassify some of the Plaintiffs as nonexempt. We affirm.

No. 19-20056

## I.

Shipcom Wireless, Inc. is a supply-chain management and technology company, which developed an inventory-management software system called "Catamaran."   In 2013, the Department of Veterans Affairs awarded Shipcom a contract to implement Catamaran at VA hospitals around the United States. With that new contract came substantial growth; to meet the needs of the contract Shipcom grew from a size of 20–30 employees to over 200 employees.

Among those hired during this period of growth were the four Plaintiff-Appellees in this case:  Justin Novick, Chris Kehn, Charles Bethas, and James Abraham.[1]  Novick, Kehn, and Bethas were hired as "Trainers."  They traveled to various VA hospitals where the Catamaran system had been installed and trained the hospital staff in how to use the system.  Abraham was hired as a "Technical Support Engineer."  He traveled to various VA hospitals, helped install the Catamaran system, and trained hospital staff on its use.

All four Plaintiffs were hired at an annual salary, rather than an hourly wage.  Thus, Shipcom treated them as exempt from the overtime requirements of the FLSA, which requires that covered and nonexempt employees be paid at an hourly rate and compensated at least one-and-one-half times the regular hourly rate for hours worked in excess of forty hours per week.  29 U.S.C. § 207(a)(1).

Later, in 2015, Shipcom engaged in an audit to reevaluate whether positions in the company were properly classified as exempt or nonexempt from FLSA overtime rules.  Shipcom ultimately decided to reclassify the Trainer position as nonexempt going forward and to pay its Trainers at an hourly rate. Using past hours that had been logged by the Trainers for the purpose of billing

---

[1] At the trial level, there was a fifth Plaintiff, Zahid Islam, another former employee of Shipcom who alleged that he was miscategorized as exempt. The jury found that he was properly categorized as exempt, and he is not a party to this appeal.

the VA, Shipcom calculated the hours that the Trainers had worked over forty in each workweek prior to the reclassification. Bethas and Kehn, who were still working at Shipcom at the time, were given backpay equal to their calculated overtime due, increased by five percent. Novick, who was no longer employed by Shipcom at the time the audit was completed, was not given backpay for overtime worked. Abraham's position was not reclassified, and he continued to be paid as an exempt employee.

All four Plaintiffs later sued Shipcom, alleging that they had been misclassified as exempt employees. Novick and Abraham sought backpay for unpaid overtime. And all four Plaintiffs sought liquidated damages under 29 U.S.C. § 260, contending that their original classification was not made in good faith.

By the time the case reached trial, only two disputed merits issues remained. The first was whether the Plaintiffs' job duties meant that they fell within the "administrative" exemption from the FLSA's overtime requirements. The second was whether Shipcom acted in good faith in its original classification of the Plaintiffs as exempt.

Before trial, Shipcom moved to present opening and closing arguments, arguing that this order was appropriate because it bore the burden of proof on both remaining issues. That motion was denied. Shipcom also moved to exclude from the jury evidence related to the audit and reclassification. Shipcom argued that this evidence was inadmissible under Federal Rule of Evidence 407 because it was a "subsequent remedial measure." Shipcom also argued that evidence of the audit was inadmissible under Rules 401 and 402 because it was not relevant to whether Plaintiffs were exempt, or alternatively, under Rule 403, because its prejudicial effect substantially outweighed its probative value. These motions were also denied.

3

No. 19-20056

The jury found that the four Plaintiffs were in fact nonexempt under the FLSA and had therefore been misclassified. The jury also issued an advisory finding that Shipcom had not acted in good faith in classifying Plaintiffs as exempt. The trial court adopted the jury's advisory finding and awarded liquidated damages. The trial court then issued a final judgment awarding each of the Plaintiffs actual damages plus liquidated damages. Shipcom timely appealed, contesting only the district court's denial of its motion to open and close and the admission of evidence related to the internal audit.

## II.

We first address the denial of Shipcom's motion to open and close, which we review for abuse of discretion. *See Martin v. Chesebrough-Pond's, Inc.*, 614 F.2d 498, 501–02 (5th Cir. 1980). Both parties agree that by the time this case reached the trial stage, the Plaintiffs' *prima facie* case for FLSA overtime wages had been stipulated. Thus, the only remaining disputed issue as to whether Plaintiffs should have been paid overtime was whether their job duties put them within the "administrative" exemption to the FLSA.[2]

In a FLSA suit for unpaid overtime, the defendant employer bears the burden of proof to establish that an employee falls under an exemption. *Samson v. Apollo Res., Inc.*, 242 F.3d 629, 636 (5th Cir. 2001). This court has

---

[2] An employee falls within the administrative exemption to FLSA overtime requirements if the employee meets minimum salary requirements (which are not in dispute in this case) and the employee in question is one:

Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).

No. 19-20056

affirmed the decision of a lower court to allow the defendant to open and close when the defendant bore the burden of proof on the remaining disputed issues. *See, e.g.*, *John Hancock Mut. Life Ins. Co. v. Dutton*, 585 F.2d 1289, 1295–96 (5th Cir. 1978); *see also Moylan v. Meadow Club, Inc.*, 979 F.2d 1246, 1251 (7th Cir. 1992) ("It is customary for the party bearing the burden of proof to open and close the argument.").

Some trial courts within this Circuit have also chosen to allow the defendant employer to open and close arguments when cases reached the jury in a similar posture to this case. *See, e.g.*, *Reyes v. Tex. EzPawn, L.P.*, No. V-03-128, 2007 WL 3143315, at *2 (S.D. Tex. Oct. 24, 2007). But the fact that some trial courts have chosen to allow defendants to open and close in similar situations does not mean that the trial court's denial of Shipcom's motion was an abuse of discretion. At least one trial court has chosen another path in a similar situation, allowing the plaintiff to open and close because it found that "follow[ing] the traditional presentation of evidence model" would be "more relatable to the jury." *Walker v. Corr. Corp. of Am.*, No. 4:14CV142-SA-SAA, 2016 WL 865295, at *4 (N.D. Miss. Mar. 2, 2016).

Because there are benefits to following either approach, the trial court did not abuse its discretion in following the path taken in *Walker* rather than *Reyes*. Shipcom has not cited, and we have not found, any case where this court has held a trial court's decision as to which party presents argument first to be an abuse of discretion. Many legal presentations, like the FLSA claim in this case, have a beginning, a middle, and an end. It was within the discretion of the trial court to decide that in this case the jury should hear the beginning of the story first, even though the legal effect of the beginning was not in dispute.

III.

We now turn to Shipcom's argument that the trial court erred in admitting evidence from its internal audit. Shipcom objected to the admission

5

No. 19-20056

of this evidence under Federal Rule of Evidence 407 and Rules 401, 402, and 403. We review the trial court's evidentiary rulings for abuse of discretion. *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.*, 761 F.3d 409, 430 (5th Cir. 2014). And even if an abuse of discretion is found, we will only reverse and remand if the error affected the substantial rights of the complaining party. *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199, 202 (5th Cir. 2016).

## A.

We first address Shipcom's argument under Rule 407. That Rule provides, in relevant part, that "[w]hen measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove: . . . culpable conduct." Fed. R. Evid. 407.

The trial court correctly held that Rule 407 does not apply to the evidence of Shipcom's internal audit. In *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416 (5th Cir. 2006), we considered the applicability of Rule 407 in the context of a suit for breach of contract, breach of implied warranties, and fraud. *Id.* at 422. The suit arose not from an accident, but instead from the sale of water filters that were allegedly beneath minimum standards of functionality. *Id.* On appeal, we found that the district court's exclusion of several items of evidence under Rule 407 was reversible error. In doing so, we homed in on the precise language of Rule 407, which (since the rule was amended in 1997), describes the remedial measure as one taken subsequent to "an earlier injury or harm." We construed the phrase "injury or harm" narrowly and explained that "[t]he admission of evidence of changes made merely to improve a product, as distinguished from remedial measures that make an 'injury or harm less likely to occur,' is not barred by the rule." *Id.* at 428. We went on to state that "by themselves, post-accident investigations would not make the event 'less likely to occur,' only the actual implemented changes make it so." *Id.* at 430.

6

We conclude that evidence from the internal audit is analogous to the post-accident investigations and changes made to improve products discussed in *Brazos River Authority*. To be sure, the audit contained information that suggested that Shipcom needed to change the classification of several of its employees from exempt to nonexempt. But the audit itself did not amend the job duties of Shipcom's employees to fit within the administrative exemptions. Instead, following the audit, it was up to Shipcom to determine how to classify these employees going forward. Thus, even assuming Shipcom conducted the audit solely to ensure that its employees were properly classified, the audit, standing alone, did not make the "earlier injury or harm less likely to occur." Fed. R. Evid. 407. And, therefore, the audit was not a subsequent remedial measure.

Nor are we persuaded that Rule 407 barred the admission of Plaintiffs' Exhibits 13, 36, 37, or 38, which were emails and letters indicating that Shipcom had decided to reclassify its Trainers from exempt to nonexempt status and provide them with back pay. Rule 407 "rests on a social policy of encouraging people to take or at least not discouraging them from taking, steps in furtherance of added safety." Fed. R. Evid. 407, notes of advisory committee on proposed rules. Here, federal law mandates that Shipcom pay its nonexempt employees overtime wages. *See* 29 U.S.C. §§ 207(a)(1), 216(b). Because Shipcom is legally obligated to take these measures to comply with the FLSA, excluding evidence of Plaintiffs' reclassification to nonexempt status would not further a social policy of encouraging employers to correctly classify their employees in the future. *See Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1343 (5th Cir. 1978) (noting that it would be inappropriate to invoke Rule 407 to preclude the admission of a Trend Cost Estimate where "the estimate was prepared not out of a sense of social responsibility but because the remedial measure was" required by the National Highway Traffic Safety

No. 19-20056

Administration); *see also Underwriters at Lloyd's London v. OSCA, Inc.*, Nos. 03-20398, 03-20817, 03-21021, 2006 WL 941794, at \*6 (5th Cir. Apr. 12, 2006) (unpublished) (per curiam).  We therefore affirm the district court's admission of evidence related to the audit over Shipcom's objections under Rule 407.

B.

We next address Shipcom's argument under Rules 401, 402, and 403. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence."  Fed. R. Evid. 401(a).  Irrelevant evidence is inadmissible.  Fed. R. Evid. 402.  And even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury. . . ."  Fed. R. Evid. 403.  But "[a] trial court's ruling on admissibility under Rule 403's balancing test will not be overturned on appeal absent a clear abuse of discretion."  *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 882 (5th Cir. 2013) (quoting *Ballou v. Henri Studios, Inc.*, 656 F.2d 1147, 1153 (5th Cir. 1981)).

We conclude that evidence related to the audit was relevant to the issue of whether Plaintiffs' job descriptions fit within the FLSA's administrative exemption.  Several of the exhibits challenged by Shipcom actually discussed and analyzed the job duties of Plaintiffs or provided information that would be useful to the jury in classifying them.  The letters and emails regarding Shipcom's decision to reclassify its Trainers and provide them with back pay were also relevant because they suggest that upon review of the Trainers' job description Shipcom determined that they were nonexempt.  After a thorough review of the remaining challenged exhibits, we cannot say that those exhibits had no tendency to make it more or less probable that Plaintiffs' job descriptions fell outside the FLSA administrative exemption.  Those exhibits, including spreadsheets reflecting the auditors' views on the FLSA status of

certain employees and emails between managers on the need to conduct a FLSA assessment of all job classifications, put the audit in context for the jury. They also showed that the employees' job descriptions were important to the auditors' analysis. Thus, they cleared the low bar for relevance established by Rule 401.[3]

Further, we can discern no clear abuse of discretion in the district court's decision to admit evidence of the audit and reclassification over Shipcom's objections under Rule 403. Evidence from Shipcom's internal audit, which reevaluated Shipcom's classification of its employees by looking at their job descriptions, carried substantial probative value with respect to whether Plaintiffs fell within the administrative exemption to the overtime requirements. Evidence that Shipcom reclassified three of the Plaintiffs and provided two of them with backpay is also significant because it suggests that the auditors determined that these Plaintiffs' job descriptions fell outside the FLSA's administrative exemption. To be sure, there was a risk that the internal audit's conclusion that three of the four Plaintiffs fell outside the administrative exemption would unfairly prejudice Shipcom or confuse the jury. But, given the great deference generally accorded a trial judge's determinations under Rule 403, we conclude that the trial court did not abuse its discretion when it allowed Shipcom to introduce evidence of the internal audit and reclassification.[4] *See Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 299–300 (5th Cir. 2005).

---

[3] Shipcom contends that testimony from its general counsel, Nakul Goenka, about the objected-to exhibits was similarly irrelevant. Because the contested exhibits were relevant, Goenka's testimony, explaining the context surrounding the exhibits, was also relevant.

[4] Shipcom contends that the trial court should have provided a limiting instruction, stating that evidence relating to the audit and reclassification was not admissible for the purpose of establishing liability on the misclassification issue. As we have concluded that the trial court did not err in allowing Shipcom to introduce this evidence for the purpose of establishing liability, we reject the argument that a limiting instruction was necessary.

No. 19-20056

C.

Even if the district court abused its discretion in admitting evidence of the internal audit and reclassification, Shipcom has failed to demonstrate that the admission of this evidence affected its substantial rights. "An error does not affect substantial rights if the court is sure, after reviewing the entire record, that the error did not influence the jury or had but a very slight effect on its verdict." *Kelly v. Boeing Petroleum Servs., Inc.*, 61 F.3d 350, 361 (5th Cir. 1995) (internal quotation marks omitted). "The burden of proving substantial prejudice lies with the party asserting error." *FDIC v. Mijalis*, 15 F.3d 1314, 1319 (5th Cir. 1994).

Here, evidence derived from the audit and reclassification revealed that, while Shipcom determined it needed to reclassify the Trainer position, its auditors viewed Abraham's position as a Technical Support Engineer to fall within the administrative exemption. Despite the auditors' conclusion that Abraham was exempt, the jury found that he should have been classified as nonexempt. Thus, the audit was not determinative with respect to how the jury viewed Abraham's position with Shipcom. As a result, it is unlikely that evidence from the audit affected the jury's verdict for the other Plaintiffs who Shipcom itself determined held jobs that could be more readily categorized as nonexempt. Moreover, the trial court instructed Plaintiffs to refrain from telling the jury that evidence from the audit was "de facto evidence of a misclassification." And nothing in the record suggests that the Plaintiffs ever argued, or the jury ever considered, the audit and reclassification to constitute *prima facie* evidence of wrongdoing on the part of Shipcom. Based on the foregoing, we conclude that even if the trial court abused its discretion in allowing Plaintiffs to introduce evidence of the audit and reclassification, the error did not affect Shipcom's substantial rights. Thus, we affirm the trial court's admission of this evidence.

No. 19-20056

IV.

We sum up our holding in this appeal. The district court did not abuse its discretion in denying Shipcom's motion to open and close. Nor did the district court abuse its discretion in allowing the admission of evidence relating to Shipcom's internal audit. Accordingly, the judgment of the district court is, in all respects,

AFFIRMED.