# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-60042

United States Court of Appeals
Fifth Circuit

**FILED**

December 27, 2016

Lyle W. Cayce
Clerk

JACOB COOPER,

Plaintiff–Appellee,

versus

LYNN BROWN,

Defendant–Appellant.

Appeal from the United States District Court
for the Northern District of Mississippi

Before STEWART, Chief Judge, SMITH and DENNIS, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Officer Lynn Brown appeals the denial of his motion for summary judgment based on qualified immunity ("QI"). Because it was clearly established that Brown's conduct constituted excessive force in violation of the Fourth Amendment, we affirm.

No. 16-60042

I.

A.

One night in April 2013, Jacob Cooper was pulled over by Officer Michael Pressgrove on suspicion of driving under the influence ("DUI"). Believing that Cooper was intoxicated, Pressgrove administered a portable breath test, then returned to his patrol vehicle. Cooper panicked and fled on foot into a residential neighborhood, where he took shelter inside a "cubbyhole," a small wood-fenced area used to store trash bins between two houses.

Because there was a passenger in his squad car, and DUI is a misdemeanor offense, Pressgrove decided not to pursue Cooper. Instead, he radioed for backup, providing Cooper's description and explaining that he was a DUI suspect and on foot. Brown was one of the officers to respond, arriving with his police dog Sunny, a Belgian Malinois. Pressgrove testified that he did not request a K9 unit and that it would have been unusual to deploy a K9 unit for a misdemeanor DUI. Pressgrove also testified that although he did not know whether Cooper was armed, he had no reason to believe that Cooper had a weapon.

Upon entering the residential neighborhood with Brown, Sunny discovered Cooper in his hiding place and bit him on the calf. The parties dispute whether Sunny initiated the attack or whether, instead, Brown ordered it. Nonetheless, the facts following the initial bite are undisputed: Sunny continued biting Cooper for one to two minutes. During that time, Cooper did not attempt to flee or to strike Sunny. Brown instructed Cooper to show his hands and to submit to him. At the time of that order, Cooper's hands were on Sunny's head. Brown testified that he could see Cooper's hands and could appreciate that he had no weapon. Brown then ordered Cooper to roll onto his stomach. He complied, and Brown handcuffed him. But he did not order

2

No. 16-60042

Sunny to release the bite until after he had finished handcuffing Cooper. As a result of the bite, Cooper suffered years of severe pain from lower-leg injuries that required multiple surgeries, including reconstruction and skin grafts.

## B.

Cooper sued Brown under 42 U.S.C. § 1983, alleging that Brown's use of force was objectively unreasonable under the Fourth Amendment.[1] After discovery, Cooper moved for partial summary judgment as to Brown's individual liability, and Brown moved for summary judgment on the basis of QI. The district court granted Cooper's motion and denied Brown's. It determined that Brown's use of the police dog was objectively unreasonable, given that Cooper was not actively resisting arrest and was suspected of only a misdemeanor DUI. It further decided that Cooper's right was clearly established.

## II.

We review *de novo* the denial of summary judgment based on QI. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010). Under the collateral-order doctrine, a denial of summary judgment based on QI is immediately appealable to the extent that the appeal turns on a question of law. *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012). On interlocutory appeal, we have jurisdiction to "review the materiality of any factual disputes, but not their genuineness." *Hogan v. Cunningham*, 722 F.3d 725, 730–31 (5th Cir. 2013). "Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to show that the defense is not available." *Kovacic*, 628 F.3d at 211. But where factual disputes exist, we accept the plaintiff's version. *Hogan*, 722 F.3d at 731.

---

[1] Cooper also asserted a claim against the City of Horn Lake. The district court entered summary judgment for the city, and that decision is not addressed on this appeal.

No. 16-60042

III.

QI provides government officials with immunity from suit "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). We apply a two-part test: (1) whether the plaintiff has alleged a violation of an actual constitutional right; and (2) if so, whether the right was clearly established at the time of the violation. *Brumfield v. Hollins,* 551 F.3d 322, 326 (5th Cir. 2008). Both questions are matters of law. *Brothers v. Zoss*, 837 F.3d 513, 517 & n.8 (5th Cir. 2016).

A.

Cooper alleges that Brown violated his Fourth Amendment rights by applying excessive force. To prevail on an excessive-force claim, he must show "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012) (quoting *Collier v. Montgomery*, 569 F.3d 214, 218 (5th Cir. 2009)). The record plainly shows that Cooper suffered an injury, but Brown contends that his application of force was objectively reasonable.

In excessive-force claims, the reasonableness of an officer's conduct depends on the "facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). We must adopt "the perspective of a reasonable officer on the scene, rather than [judge] with the 20/20 vision of hindsight." *Id.* Our inquiry is "whether the officer['s] actions [we]re 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying

4

intent or motivation." *Id.* at 397.

Application of the *Graham* factors shows that Brown's conduct was objectively unreasonable. DUI is a serious offense, *Brothers*, 837 F.3d at 519, so that factor favors Brown. But the other factors push heavily for Cooper.

No reasonable officer could conclude that Cooper posed an immediate threat to Brown or others. Cooper was not suspected of committing a violent offense, and Brown testified that Pressgrove, when calling for backup, had not warned that Cooper might be violent. Moreover, Brown could see Cooper's hands and knew he had no weapon.[2] Indeed, Brown's own expert testified that there was no evidence that would have led a reasonable officer to believe that Cooper was a threat. Thus, this factor weighs strongly for Cooper.

On the third factor, Cooper was not actively resisting arrest or attempting to flee or to strike Sunny. The only act of "resistance" that Brown identifies is Cooper's failure to show his hands because, although they were on Sunny's head and visible to Brown, Brown wanted Cooper to raise his hands. Given that Sunny was still latched onto Cooper's calf at the time, the failure to raise his hands can hardly be characterized as "active resistance."[3] But even if it

---

[2] Brown contends that the fact that Cooper was unsearched made Cooper more of a threat. Although this will sometimes be a relevant fact—for example, where a plaintiff is suspected of committing a violent crime—it is not enough, standing alone, to permit a reasonable officer to characterize a suspect as an immediate threat.

[3] *See Goodwin v. City of Painesville*, 781 F.3d 314, 325 (6th Cir. 2015) (observing that the plaintiff's "failure to present his hands to be cuffed was due to Taser-induced involuntary convulsions" and that this could not constitute active resistance under *Graham*); *Kopf v. Wing*, 942 F.2d 265, 268 (4th Cir. 1991) ("We believe that a jury could find it objectively unreasonable to require someone to put his hands up and calmly surrender while a police dog bites his scrotum."); *Malone v. City of Fort Worth*, No. 4:09-CV-634-Y, 2014 WL 5781001, at *10 n.5 (N.D. Tex. Nov. 6, 2014) ("The Court wonders how a man, who is prone on the ground and being attacked by a dog, can reasonably be expected to expose his hands and unflinchingly hold them behind his back.").

Brown acknowledged that it might prove difficult for a suspect to convey his surrender while fending off a dog attack:

was, any "resistance" ended quickly. Brown ordered Cooper to roll onto his stomach, and Cooper complied with that order. At that point, no reasonable officer could believe that Cooper was actively resisting arrest; to the contrary, he was actively *complying*. And yet Brown still did not command Sunny to release the bite.

Moreover, Brown was required to "assess not only the need for force, but also 'the relationship between the need and the amount of force used.'"[4] Brown subjected Cooper to a lengthy dog attack that inflicted serious injuries, even though he had no reason to believe that Cooper posed a threat, and without first attempting to negotiate.[5] And he continued applying force even after Cooper was actively complying with his orders. Brown's own expert conceded that there was no reason for Brown to permit Sunny to continue attacking once Cooper was on his stomach. The expert's testimony is telling:

Q: Once Mr. Cooper rolled to his stomach and put his hands where Officer Brown told him to put his hands, was there any reason to leave the dog on at that point?

A: I cannot think of any reason to allow the dog to remain physically engaged after that point.

Q: In fact, officers cuff suspects in this manner routinely, correct?

A: Yes, sir.

Q: Without the use of a dog?

---

Q. Officer Brown, you can understand how somebody who is being bitten by a Malinois would be slightly distracted while you're giving them a verbal command?

A. Right.

[4] *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Gomez v. Chandler*, 163 F.3d 921, 923 (5th Cir. 1999)); *see also Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012) (noting that officers are permitted to respond to escalating verbal and physical resistance with "measured and ascending" responses).

[5] *See Deville*, 567 F.3d at 167–68 (holding that a reasonable jury could find that the degree of force used was not justified where the officer "engaged in very little, if any, negotiation" with the suspect and "instead quickly resorted to breaking her driver's side window and dragging her out of the vehicle.").

6

A: Yes, sir.

Q: And, in fact, most arrests occur without the use of a dog, correct?

A: Yes, sir, overwhelmingly.

Q: Okay. Is there any evidence you can show the jury in this case to account why Officer Brown could not order his dog to a backup position once Mr. Cooper was on his stomach instead of leaving the dog on?

A: No, sir.

The undisputed facts establish that Brown's use of force was objectively unreasonable.[6] To be clear, we do not say that *any* application of force to a compliant arrestee is *per se* unreasonable, and we do not opine on the line of reasonableness. Instead, we state only the obvious: Under the facts in this record, permitting a dog to continue biting a compliant and non-threatening arrestee is objectively unreasonable.

## B.

The second part of the QI inquiry looks to whether the right was clearly established at the time of the violation. "To answer that question in the affirmative, we must be able to point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc) (internal quotation marks and citation omitted). But "this does not mean that 'a case directly on point' is required." *Id.* at 372 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Rather, "existing precedent must have placed the statutory or constitutional question *beyond debate*." *Id.* at 372 (quoting *al-Kidd*, 563 U.S. at 741 (emphasis added)).

The central concept is "fair warning." *Id.* at 372; *Newman*, 703 F.3d

---

[6] Although Brown and Cooper dispute whether Brown ordered Sunny to attack, that fact is not material to our holding. Even if the dog attacked of its own volition, Brown permitted the attack to continue for one to two minutes.

at 763. "The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Newman*, 703 F.3d at 763 (quoting *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (internal quotation marks omitted)). "Furthermore, 'in an obvious case,' the *Graham* excessive-force factors themselves 'can clearly establish the answer, even without a body of relevant case law.'" *Id.* at 764 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)) (internal quotation marks omitted).[7]

Cooper's right was clearly established. Our caselaw makes certain that once an arrestee stops resisting, the degree of force an officer can employ is reduced. "[A]lthough the right to make an arrest necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it, the permissible degree of force depends on [the *Graham* factors]." *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (internal quotation marks omitted). In *Bush*, we held that it was objectively unreasonable for an officer to slam an arrestee's face into a nearby vehicle when the arrestee "was not resisting arrest or attempting to flee." *Id.* Similarly, we declared in *Newman*, 703 F.3d at 762, that tasing an arrestee was objectively unreasonable where "[t]he videos d[id] not show Newman attempting to strike either officer, holding a weapon, or even reaching for his waistband," and "[t]he officers did not try to warn each other . . . that Newman had a weapon, which might be expected if either officer truly thought that at the time."

In the same way, Cooper was not attempting to resist arrest or flee, and

---

[7] *See also Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 277–78 (5th Cir. 2015) ("The present case is an 'obvious one where *Graham* and *Garner* alone offer a basis for decision.'") (quoting *Brosseau*, 543 U.S. at 199).

Brown had no reason to think that he posed an immediate threat. Moreover, the fact that *Bush* and *Newman* are not dog-bite cases does not shield Brown. "Lawfulness of force . . . does not depend on the precise instrument used to apply it. Qualified immunity will not protect officers who apply excessive and unreasonable force merely because their means of applying it are novel." *Id.* at 763–64 (footnotes omitted). Thus, Brown had "fair warning" that subjecting a compliant and non-threatening arrestee to a lengthy dog attack was objectively unreasonable.[8]

This comports with decisions of sister circuits that have considered similar facts. In *Priester v. City of Riviera Beach*, 208 F.3d 919, 923–24 (11th Cir. 2000), the Eleventh Circuit held that it was objectively unreasonable for officers to allow a dog to bite and hold a suspect for two minutes—which it described as "an eternity"—where he was compliant with orders and not resisting arrest. The Eleventh Circuit confronted the question a second time in *Edwards v. Shanley*, 666 F.3d 1289 (11th Cir. 2012). There, a man was pulled over for a traffic violation and fled on foot. When the officers encountered him, he was lying on his stomach with his hands exposed. The man verbally surrendered, shouting, "[Y]ou got me. I only ran because of my license." Nonetheless, the officers released their dog and permitted it to continue biting him for five to seven minutes. *Id.* at 1292–93. The court held that the officers' conduct violated the constitution. Its application of the *Graham* factors is instructive:

Critical to this determination is the fact that, in subjecting Edwards to

---

[8] Our decision in *Anderson v. McCaleb*, 480 F. App'x 768, 773 (5th Cir. 2012) (per curiam), is also closely on point. Because it is unpublished, it does not constitute clearly established law for purposes of QI, but it aptly illustrates the established right. There, a suspect was pulled over and fled on foot. When the officers encountered him in a backyard, he was holding an iPod, which the officers claimed to think was a weapon. One officer tased the plaintiff five or six times, including after the plaintiff was on the ground and no longer resisting. We denied QI because the officer "should have known that he could not continue to shock [the plaintiff] with the taser after he was no longer resisting arrest." *Id.*

the dog attack, Officer Shanley *increased* the force applied at the same time the threat presented by Edwards *decreased*. To be sure, the seriousness of Edwards's fleeing Officer Lovett had not changed, and thus under the first *Graham* factor we accept that Officer Shanley had some reason to approach Edwards with concerns for his own safety. But insofar as fleeing from the police raises doubt about the danger an individual poses, Edwards mitigated that doubt by laying prone with his hands exposed and begging to surrender. As a result, the second and third *Graham* factors weigh in favor of Edwards's argument that extraordinary force was not necessary or appropriate for the entire duration of the dog attack.

*Id.* at 1296.

To the same effect, the Ninth Circuit held that "it was clearly established that excessive duration of the bite and improper encouragement of a continuation of the attack by officers could constitute excessive force that would be a constitutional violation." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998). And the Sixth Circuit denied QI to an officer who "allowed a 'bite and hold' dog, whose training was questionable, to attack two suspects who were not actively fleeing and who, because of proximity, showed no ability to evade police custody." *Campbell v. City of Springboro*, 700 F.3d 779, 789 (6th Cir. 2012).

## IV.

Although Brown appeals the partial summary judgment for Cooper, we lack appellate jurisdiction to review that decision.[9] Under 28 U.S.C. § 1291, we have jurisdiction only over "final" decisions. The district court entered partial summary judgment for Cooper "as to the issue of liability," but it did not

---

[9] Though the parties assume jurisdiction is proper, "[w]e must always be sure of our appellate jurisdiction and, if there is doubt, we must address it, *sua sponte* if necessary." *USPPS, Ltd. v. Avery Dennison Corp.*, 647 F.3d 274, 277 (5th Cir. 2011) (quoting *Castaneda v. Falcon*, 166 F.3d 799, 801 (5th Cir. 1999)).

decide damages.[10]  "Such judgments are by their terms interlocutory, and where assessment of damages or awarding of other relief remains to be resolved have never been considered to be 'final' within the meaning of 28 U.S.C. § 1291." *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 744 (1976) (citation omitted).[11]  Because the partial summary judgment was not "final," it is not properly before this court as part of the QI appeal.[12]

The order denying qualified immunity is AFFIRMED.  The appeal of the partial summary judgment for Cooper is DISMISSED for want of appellate jurisdiction.

---

[10] The district court left the damages issue for the jury trial, which it stayed pending this appeal.

[11] *See also Way v. Reliance Ins. Co.*, 815 F.2d 1033, 1034 (5th Cir. 1987) (per curiam) (dismissing an appeal for lack of jurisdiction because the partial summary judgment was not final); *Halliburton Co. Benefits Comm. v. Graves*, 191 F. App'x 248, 250–51 (5th Cir. 2006) (per curiam) (same).

[12] Some courts have used the doctrine of "pendent appellate jurisdiction" to review partial-summary-judgment orders alongside orders denying QI. *E.g.*, *Farm Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 549 (6th Cir. 2002).  This court, however, has held that "[p]endent appellate jurisdiction should be exercised only in 'rare and unique' circumstances," where the non-final claim is "inextricably intertwined" with the QI inquiry. *Gros v. City of Grand Prairie*, 209 F.3d 431, 436–37 (5th Cir. 2000) (quoting *Woods v. Smith*, 60 F.3d 1161, 1166 n.29 (5th Cir. 1995)).  We generally have resisted efforts to bootstrap non-final claims into QI appeals.  *See Gros*, 209 F.3d at 437; *Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 468 (5th Cir. 2014); *Cantu v. Rocha*, 77 F.3d 795, 805 (5th Cir. 1996); *see also Guillemard-Ginorio v. Contreras-Gomez*, 490 F.3d 31, 37 n.4 (1st Cir. 2007) (declining to consider a partial summary judgment in a QI appeal because of "the well-established rule of reviewing only a district court's final decisions.").  Because there are no "rare and unique" circumstances here, we decline to exercise pendent appellate jurisdiction.