# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 31, 2022

Lyle W. Cayce
Clerk

No. 22-10011

Mucio Ramirez,

*Plaintiff—Appellant*,

*versus*

Christopher Martin,

*Defendant—Appellee*.

Appeal from the United States  District Court
for the Northern District of Texas
USDC No. 3:20-CV-1927

Before King,* Duncan, and Engelhardt, *Circuit Judges*.
Per Curiam:**

Mucio Ramirez, driving while intoxicated, led police on a car chase before finally stopping on a residential street. After he exited his vehicle, he initially failed to comply with officer commands. As Officer Christopher Martin arrested Ramirez, he grabbed Ramirez's arm and pushed him to the

---

* Judge King concurs in the judgment only.

** Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 22-10011

ground, causing his head to hit the pavement and cutting his forehead. Ramirez sued Martin for using excessive force. The district court granted Martin's motion to dismiss on the basis of qualified immunity. We affirm.

## I.

On the night of April 14, 2019, police officers Brad Hanks and Natausha Swavey attempted to pull over Mucio Ramirez for swerving in traffic and having a broken taillight. Instead of stopping, Ramirez led officers on a mile-and-a-half chase. Hanks and Swavey called for backup, informing dispatch they were in felony pursuit of a vehicle. Although Ramirez stopped for traffic lights, Hanks cautioned: "I don't want to approach him because he may be trying to bait us." Ramirez eventually stopped his vehicle on an unlit, residential street. Hanks and Swavey stepped out of their police cruiser, firearms and flashlights drawn, and Hanks began verbally engaging Ramirez.

Officer Christopher Martin, along with other officers, then arrived on the scene. Hanks instructed Ramirez to place his hands outside the car window, but Ramirez instead exited the vehicle and turned towards the officers. Hanks commanded Ramirez to turn away, slowly walk backwards, and drop to his knees. Ramirez initially complied but then abruptly stood up. The officers commanded Ramirez to get back on his knees, and he complied after several demands. At this point, Ramirez remained uncuffed, had not been searched, and officers had not yet checked his car for other passengers.

With Ramirez back in the kneeling position, Martin and Swavey were directed to secure Ramirez, so the other officers could safely approach and clear Ramirez's vehicle. The plan was for Martin and Swavey to each grab one of Ramirez's arms, and then take him to the ground and handcuff him. But as they approached Ramirez, Swavey paused to holster her weapon while Martin grabbed Ramirez's arm and pushed him to the ground. Ramirez collapsed forward and his head hit the pavement, resulting in a significant cut

No. 22-10011

above his right eye. Ramirez was later charged with a felony for evading arrest and a misdemeanor for driving while intoxicated.

Ramirez sued Martin under 42 U.S.C. § 1983, alleging Martin used excessive force in violation of the Fourth and Fourteenth Amendments. Martin invoked qualified immunity and moved for summary judgment. The district court granted the motion, finding that Martin's use of force was not objectively unreasonable, and, alternatively, that Martin violated no clearly established law. Ramirez timely appealed.

## II.

We review a grant of summary judgment based on qualified immunity *de novo*. *Edwards v. Oliver*, 31 F.4th 925, 928–29 (5th Cir. 2022). Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "However, a good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020) (quotation omitted).

Ramirez's arrest was recorded on eight different video cameras, which captured the interaction from the moment the officers attempted to pull Ramirez over through Martin's use of force. Since these videos show the full interaction between Martin and Ramirez, we review the "facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007). So, while viewing the evidence favorably to the nonmovant, "we assign greater weight, even at the summary judgment stage, to the . . . video recording[s] taken at the scene." *Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022) (quoting *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011)).

### III.

Qualified immunity protects law enforcement officers from suit and liability for damages if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). So, to strip Martin of qualified immunity, Ramirez must show that Martin "(1) violated a constitutional right and (2) that 'the right at issue was "clearly established" at the time of [the] alleged misconduct.'" *Ramirez v. Escajeda*, 44 F.4th 287, 291 (5th Cir. 2022) (alteration in original) (quoting *Pearson*, 555 U.S. at 232). The district court concluded neither prong was satisfied. Because we agree that Martin's use of force was not excessive, we do not proceed to the second prong.

Prong one asks whether Martin's arrest of Ramirez violated the Fourth Amendment, which prohibits officers from using force that is "clearly excessive and objectively unreasonable." *Betts*, 22 F.4th at 582 (quotation omitted); *see also Buehler v. Dear*, 27 F.4th 969, 980–81 (5th Cir. 2022). The following factors guide this fact-intensive inquiry: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). We weigh the factors from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Carroll v. Ellington*, 800 F.3d 154, 173 (5th Cir. 2015) (quotation omitted). That is because "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." *Graham*, 490 U.S. at 397. Finally, "we consider 'the relationship between the need for force and the amount of force used.'" *Betts*, 22 F.4th at 582 (quoting *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020)) (cleaned up).

No. 22-10011

Applying the *Graham* factors here, we conclude that Martin's use of force to effect the arrest was not unreasonable. First, as to the "severity of the crime," Ramirez concedes he engaged in serious crimes by leading police on a car chase and driving while under the influence.. *See U.S. v. Harrimon*, 568 F.3d 531, 534, 537 (5th Cir. 2009) (fleeing by vehicle is a "purposeful, violent, and aggressive" felony under Texas law); *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) ("DUI is a serious offense."). We thus agree with the district court that the first *Graham* factor weighs against Ramirez.

Turning to the second *Graham* factor, Ramirez argues that no jury could reasonably believe he posed a threat to the officers' safety, because, when Martin used force, he had already surrendered, was compliant, and was on his knees. But we cannot ignore a suspect's actions that immediately "preceded the surrender." *Salazar v. Molina*, 37 F.4th 278, 282 (5th Cir. 2022). Such actions are pertinent because an officer need not take a suspect's compliance at face value after the suspect just tried evading custody. *See ibid.* (concluding officers may reasonably question the sincerity of a suspect's surrender who previously tried evading police). Thus, in *Salazar v. Molina*, we granted qualified immunity to an officer who tased a suspect who was already lying prone on the ground, because the "previously noncompliant suspect" still posed a threat to officers. *Id.* at 283. We stated that "despite the *appearance* of an unambiguous surrender," the "relevant inquiry is whether" a reasonable officer would "doubt the suspect's compliance and still perceive a threat." *Ibid.* (emphasis in original) (quotation omitted).

Here, Martin had reasons both to doubt Ramirez's compliance and to view him as a threat. Ramirez's purported surrender came mere seconds after he disobeyed commands to stay in his car and to drop to his knees, and only a few minutes after he led officers on a nighttime car chase before stopping on an unlit street. During the chase, another officer cautioned that Ramirez's stop-and-go driving suggested he may be trying to "bait us."

Under such circumstances, a reasonable officer in Martin's shoes could view Ramirez's surrender with skepticism. *See id.* at 282 (when a suspect previously tried "to evade capture" and remains unrestrained, "it is reasonable for officers to question whether the now-cornered suspect's purported surrender is a ploy").

Moreover, Martin arrived at a nighttime scene where an already tense and potentially dangerous situation was playing out. Akin to the suspect in *Salazar*, Ramirez had "just committed a dangerous felony," remained unrestrained, and had not yet been searched for a weapon. *See id.* at 284. (finding that such a suspect remained a threat). And because Ramirez had just disobeyed commands to remain in his vehicle, officers could not be sure of Ramirez's next act. For these reasons, multiple officers on the scene had their service weapons drawn *until* Martin secured Ramirez and officers cleared his vehicle.

Other variables further heightened Ramirez's threat risk to the officers. Ramirez was visibly intoxicated and erratically disobeyed officers' commands, and consequently officers were unable to safely approach his car to check for other passengers until he was subdued. In light of those circumstances, Martin was reasonably on guard about what Ramirez might do next. *See Cadena v. Ray*, 728 F. App'x 293, 296 (5th Cir. 2018) ("[Arrestee's] intoxicated state and erratic behavior gave the Officers further reason to believe he was a threat.") (unpublished); *Cooper*, 844 F.3d at 523 n.2 (suggesting that an unsearched suspect of a violent crime may pose a credible threat); *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) ("Officers may consider a suspect's refusal to comply with instructions during a traffic stop in assessing whether physical force is needed to effectuate the suspect's compliance.").

Of course, once a suspect surrenders, "the degree of force an officer can employ is reduced." *Cooper*, 844 F.3d at 524. But even assuming Ramirez legitimately intended to surrender, he cannot expect the "same Fourth Amendment protection from . . . force he would have received had he promptly surrendered in the first place." *Salazar*, 37 F.4th at 282–83 (footnote omitted). What's more, Martin ratcheted down his use of force to Ramirez's then-current threat level. Rather than using even intermediate force, like a taser, Martin pushed Ramirez to the ground and then refrained from using additional force once Ramirez was subdued. *See Betts*, 22 F.4th at 584 (finding officer's tasing of suspect was not excessive because once the suspect was handcuffed no additional force was used). Thus, the second *Graham* factor favors Martin.

Finally, the third *Graham* factor—whether an arrestee is actively fleeing or resisting arrest—also justifies Martin's use of force. For the same reasons that Ramirez posed a threat, Martin could have been reasonably wary about whether Ramirez would remain compliant. Often, the signs a suspect is readying for a fight or preparing for flight are of the same stripe. *See Escobar v. Montee*, 895 F.3d 387, 396 (5th Cir. 2018) ("[T]he third *Graham* factor . . . largely folds into the second. If [the suspect] may have posed a threat, then he also might have attempted to flee."). For example, in *Salazar*, the suspect previously led police on a chase and disobeyed their commands to remain in his vehicle. 37 F.4th at 284. We found that it was "just as reasonable for [the officer] to fear that [the suspect] still sought to escape as it was for [the officer] to fear that [the suspect] was a threat." *Ibid.* So too here. Ramirez led officers on a mile-and-a-half chase and disobeyed officer commands by exiting his vehicle and not staying stationary on his knees. These are both reasons for officers to believe that Ramirez either intended to flee or that he posed a threat. Under these circumstances, Martin's use of force was justified.

No. 22-10011

In sum, all three *Graham* factors favor Martin. We therefore agree with the district court that Martin did not use excessive force and is entitled to qualified immunity.

AFFIRMED.