# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 7, 2023

Lyle W. Cayce
Clerk

No. 22-60349

Robert Chambers,

*Plaintiff—Appellee*,

*versus*

Officer Kenneth Short, *individually and in his official capacity*,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:20-CV-58

Before Higginbotham, Smith, and Engelhardt, *Circuit Judges*.
Per Curiam:*

Officer Kenneth Short brings an interlocutory appeal of the denial of his motion for summary judgment. He contends that qualified immunity ("QI") precludes Robert Chambers's 42 U.S.C. § 1983 claims of excessive force arising from an incident in which Chambers's femur was broken after a traffic stop. We dismiss the appeal in part for want of jurisdiction, affirm the denial of summary judgment to the extent it asks the legal question, and

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

remand for further proceedings.

## I.

The parties provide disparate accountings of the facts. According to Chambers, who was then seventy years old, he and his friend, Anthony Thornton, were "hanging out" at a gas station when several police officers, including Short, approached them. Short told Chambers and Thornton that both needed to leave the premises. Without seeing Short, Chambers replied, "yes, ma'am," alleging that he did not realize Short was a man and that he had a "higher-pitched, feminine sounding voice." Thornton posits that Short became upset after this misunderstanding. Thornton and Chambers then left, and as Thornton was walking away, he saw Chambers driving from the gas station with a police car following him.

Shortly afterward, Thornton arrived at the block where he and Chambers lived, about half a mile from the gas station, and saw approximately five police cars near Chambers's house. Multiple other neighbors came out of their homes to observe the fracas. Chambers was sitting in his car, parked in his carport. Short was standing next to the driver's side door. Chambers made no moves to flee, assault an officer, or otherwise resist Short or the other nearby officers.

According to all the neighbors, Thornton, and Chambers, Short opened the car door, lifted Chambers, and slammed him into the concrete driveway, causing injury. Next, an officer handcuffed Chambers while he was on the ground. Several officers gathered for a brief discussion, after which one approached Chambers, who was still lying on the ground, and according to Thornton, ordered Chambers to get up. Chambers could not do so because of his injury. The officers instead carried Chambers, placed him into a police car, and drove him to the police precinct. An ambulance then took him to a hospital, where he was diagnosed with a broken femur.

2

Chambers contends that he is now permanently handicapped and continues to experience extreme pain and difficulty walking.

In contrast to Chambers's account, Short alleges that he and the other officers noticed several persons drinking and smoking marihuana at the gas station, including a "heavily intoxicated" Chambers. Short avers that he instructed Chambers not to drive home, and Chambers agreed, got out of his vehicle, and locked his car before walking away. Short then continued his patrol and only minutes later witnessed Chambers driving. He then alleges that he turned on his lights and attempted to make a traffic stop. Chambers did not comply and drove off.

Short followed Chambers to Chambers's home. On arrival, Chambers exited his vehicle and attempted to flee. The officer ordered Chambers to stop, but Chambers ignored these orders. Unfortunately for Chambers, he fell while trying to escape and injured himself. Short then put Chambers, who smelled of alcohol, in handcuffs, informed him he was under arrest, and called for a DUI officer. While the DUI officer was en route, Chambers complained of pain but refused medical assistance.

The DUI officer took Chambers into his custody, and eventually, after he was transported to the police precinct, Chambers was sent to the hospital. At the hospital, Short issued Chambers four traffic citations for "(1) Failure to Yield for blue lights and sirens; (2) Driving with an expired or no driver's license; (3) Driving on the wrong side of the road; and (4) No Insurance." As Short was leaving, Chambers apologized to him and said, "I'm sorry man I should have listen [*sic*] to you. I shouldn't have done that. I'm sorry."

No breathalyzer test was performed on Chambers. According to Short, the DUI officer said no breathalyzer was performed because "the test is not performed when someone is in pain." At the hospital, Chambers's alcohol level on arrival was "somewhat elevated at 136," and the hospital

No. 22-60349

diagnosed him with a right femur fracture.

Chambers sued Short under § 1983, alleging that the officer had violated his Fourth Amendment rights by using excessive force. Short moved for summary judgment based on QI. The district court denied Short's motion, reasoning that Chambers had offered sufficient evidence to create a genuine fact dispute regarding whether Short's conduct was objectively unreasonable. Short appeals the denial of summary judgment.

## II.

A denial of summary judgment based on QI is "immediately appealable to the extent that the appeal turns on a question of law."[1] *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016). Such denials are reviewed *de novo. See Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016).

When considering an appeal of this nature, "we can review the *materiality* of any factual disputes, but not their *genuineness*." *Wagner v. Bay City*, 227 F.3d 316, 320 (5th Cir. 2000). "[W]e review the complaint and record to determine whether, assuming that all of [the plaintiff's] factual assertions are true, those facts are materially sufficient to establish that defendants acted in an objectively unreasonable manner." *Id.* "We have no jurisdiction to hear an interlocutory appeal . . . when a district court's denial of qualified immunity rests on the basis that genuine [disputes] of material fact exist." *Michalik v. Hermann*, 422 F.3d 252, 257 (5th Cir. 2005). In sum, our "review is limited to evaluating only the legal significance of the undisputed facts." *Mitchell v. Mills*, 895 F.3d 365, 369 (5th Cir. 2018).

---

[1] The district court is required to draw facts and inferences in the light most favorable to the nonmoving party. *Perez v. United States*, 312 F.3d 191, 193–94 (5th Cir. 2002) (per curiam). Here, that is Chambers.

No. 22-60349

### III.

Short purports that we have jurisdiction because of the district court's characterization of Chambers's alleged drunk driving. The officer contends that Chambers's intoxication was indisputably established by "uncontradicted and unimpeached testimony." Accordingly, he asks us to assess the district court's determination that this fact was in dispute.

The officer's contention is colorable. Chambers never directly contradicts that he was intoxicated at any point in his sworn testimony or by pointing to other evidence. Instead, Chambers primarily relies on the fact that neither Short nor the DUI officer performed a breathalyzer test as proof that he was not intoxicated. Furthermore, the hospital's laboratory results showing that Chambers had an elevated alcohol level is some evidence that he was indeed drunk.[2] Still, when the facts and inferences are construed in the light most favorable to Chambers, the court was entitled to hold that there was a factual dispute over the issue of Chambers's purported intoxication.

Thus, because the district court expressly concluded that "Chambers offer[ed] summary judgment evidence sufficient to create a genuine fact [dispute] as to whether Short's conduct . . . was objectively unreasonable in light of clearly established law," we lack jurisdiction over Short's arguments on this point. *See Michalik*, 422 F.3d at 257.[3]

---

[2] That being said, no party submitted testimony or evidence explaining the lab results, the units of measurement, or any confounding variables the court should be aware of, so we put little weight on the results.

[3] In support of his theory that we do have jurisdiction, Short directs us to *Orr*, in which we addressed whether a video is required to determine a lack of a factual dispute. 844 F.3d at 490–91. *Orr* did not address *Wagner*. In any case, even if *Orr* conflicts with *Wagner,* we must follow the earlier decision. *See H&D Tire & Auto.-Hardware, Inc. v. Pitney Bowes Inc.*, 227 F.3d 326, 329 (5th Cir. 2000) ("When panel opinions appear to conflict, we are bound to follow the earlier opinion.").

Short also submits a legal question: Whether slamming an allegedly intoxicated driver to the ground to execute an arrest constitutes excessive force. Although Short's contentions as to this point are predicated on disputed facts, we have jurisdiction to consider this legal question. *See Cooper*, 844 F.3d at 522.

When a police officer invokes QI, the summary judgment burden of proof shifts to the plaintiff to show that the officer is not entitled to immunity. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010). Nevertheless, we still "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (per curiam). When deciding whether the defendant is entitled to QI, we determine "whether the plaintiff has alleged a violation of a constitutional right" and "whether that right was clearly established at the time of the incident." *Orr*, 844 F.3d at 492 (cleaned up).

First, Chambers posits that Short used excessive force by slamming him into the ground. "To prevail on an excessive force claim, a plaintiff must show: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005). The excessive-force calculus is fact-intensive, and our review is informed by the *Graham* factors: "[T]he severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Chambers has sufficiently demonstrated an excessive-force claim when viewing the facts in the light most favorable to him. First, there is no

No. 22-60349

dispute that Chambers suffered a broken femur because of Short's actions.[4] Second, there is little indication that Chambers could have reasonably been viewed as a threat to any officers or other persons, at least based on the facts as found in genuine dispute by the district court.[5] Nor, according to those facts, did Chambers attempt to flee or resist Short. The use of force was clearly excessive and unreasonable.

Even if we assume Chambers was intoxicated and modify our review to reflect the seriousness of a DUI offense, the answer does not change. In *Cooper*, we determined that it was objectively unreasonable for an officer to allow a police dog to attack a suspected drunk driver when the driver did not attempt to flee or resist, and the officer had no reason to believe the driver posed a threat. 844 F.3d at 522–24. The present case is quite similar.

In *Cooper*, the court concluded that the first *Graham* factor—the severity of the crime—weighed in favor of the police because the offense involved a DUI. *Id.* at 522. Turning to the second factor, the court stated, "[n]o reasonable officer could conclude that Cooper posed an immediate threat." *Id.* He "was not suspected of committing a violent offense," and there was no indication he "might be violent." *Id.* Moreover, the officers "could see [his] hands and knew he had no weapon." *Id.* at 522–23. Only one officer was in pursuit of Cooper, and only that officer testified to being able to see Cooper's hands. Finally, as to the third *Graham* factor, the court

---

[4] *See Tarver*, 410 F.3d at 752 ("Tarver's summary judgment evidence adequately establishes that his injuries that day were caused solely by the conduct of Officer Bubela rather than from a preexisting condition or an action of a third party.").

[5] We disagree with the officer's contention that Chambers was a risk to other motorists. Chambers was not resisting arrest or behaving aggressively, and his car was surrounded by approximately five police cars. *See Cooper*, 844 F.3d at 522–23. Moreover, Chambers was parked in his carport and could not have driven forward without crashing into his own home.

noted that although "Cooper was not actively resisting arrest or attempting to flee or to strike [the police dog biting him]," the officer "subjected Cooper to a lengthy dog attack that inflicted serious injuries, even though [the officer] had no reason to believe that Cooper posed a threat, and without first attempting to negotiate." *Id.* at 523.

Though the first *Graham* factor favored the police officer in *Cooper*, that court concluded that "the other factors push heavily for Cooper," *id.* at 522, and, accordingly, determined that "[t]he undisputed facts establish that Brown's use of force was objectively unreasonable," *id.* at 524. The similarities between *Cooper* and the instant case support our conclusion.

Therefore, even if we assume Chambers was intoxicated, the *Graham* factors as a whole weigh in his favor, such that if a jury found the facts as set out by Chambers's side, the use of force was a constitutional violation.[6]

We therefore turn to the second prong and consider whether Chambers's constitutional right was clearly established when he was injured. To establish this prong, "we must be able to point to controlling authority . . . that defines the contours of the right in question with a high degree of particularity." *Morgan v. Swanson*, 659 F.3d 359, 371–72 (5th Cir. 2011) (en banc). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

Chambers's right was clearly established. "Our caselaw makes certain that once an arrestee stops resisting, the degree of force an officer can

---

[6] It is worth noting that Chambers was not charged with DUI. Instead, he was issued citations for "(1) Failure to Yield for blue lights and sirens; (2) Driving with an expired or no driver's license; (3) Driving on the wrong side of the road; and (4) No Insurance." These citations were all dismissed or remanded.

employ is reduced."[7]  *Cooper*, 844 F.3d at 524.  Like the plaintiff in *Cooper*, when construing the facts in Chambers's favor, he was not attempting to resist arrest or flee at the time of the confrontation.  And during the altercation in the driveway, Short had no reason to believe that Chambers posed an immediate threat.

Short attempts to compare his case to *Griggs v. Brewer*, 841 F.3d 308 (5th Cir. 2016).  There, an officer conducted a traffic stop after Griggs ran a red light.  The officer smelled alcohol and attempted to arrest Griggs midway through a field sobriety test.  Griggs refused to comply with orders and lurched to the side, forcing the officer to place Griggs in a chokehold and body-slam him to the ground.  On those facts, our court ruled that the officer's conduct was not constitutionally unreasonable, and he was protected by QI.  *Id.* at 313–14, 316.

The comparison is inapt.  Although *Griggs* concerned a motorist who was pulled over for suspected intoxication, the motorist displayed "erratic behavior" and overtly resisted during the arrest.  *Id.* at 316.  Additionally, the motorist was actually arrested for DUI, which is not the case here.

So *Griggs* is not sufficiently similar: At no point do undisputed facts show that Chambers resisted arrest when pulled over.  Nor do they indicate that he was a threat to Short's or others' safety when in his carport.  Finally, Short did not even arrest Chambers for DUI.

Accordingly, the second prong is also satisfied, and, assessing solely the legal question and not the genuineness of the dispute, the district court did not err in denying QI.

---

[7] *See also Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (holding it was unreasonable for an arresting officer to slam the plaintiff's head into a vehicle when the plaintiff was not resisting arrest or fleeing).

No. 22-60349

Based on the foregoing, we DISMISS Short's appeal in part for lack of jurisdiction as to the factual issues and AFFIRM in part the order denying summary judgment on QI. The case is REMANDED for further proceedings as needed.