# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 22, 2024

Lyle W. Cayce
Clerk

No. 23-30486

Bobby Stevenson,

*Plaintiff—Appellee*,

*versus*

Paul M. Tocé, *in his individual capacity*; Randy Lavespere, *in his individual capacity*,

*Defendants—Appellants*.

---

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:22-CV-472

---

Before Clement, Graves, and Ramirez, *Circuit Judges*.

James E. Graves, *Circuit Judge*:

Bobby Stevenson is a prisoner at the Louisiana State Penitentiary in Angola, Louisiana. He alleges that for years he has been forced to labor in the prison's agricultural fields despite extreme pain in his ankle caused by two broken surgical screws. Now, he sues two prison physicians who he claims refused to fix the broken screws or relieve him from field labor. The physicians moved to dismiss the suit, invoking the defense of qualified immunity. The district court found Stevenson's allegations sufficient to overcome the defense. We AFFIRM.

No. 23-30486

# I. BACKGROUND

## a. Factual background

The following facts are contained in Stevenson's operative complaint or were explicitly incorporated into it from an earlier complaint. At the motion to dismiss stage, we accept Stevenson's allegations as true. *Crane v. City of Arlington*, 50 F.4th 453, 461 (5th Cir. 2022).

Stevenson fractured his right ankle playing basketball in the prison yard in 2003. He was treated outside the prison by an orthopedic surgeon, who installed surgical screws in Stevenson's ankle to keep the bones in place. To keep the screws from breaking, Stevenson was permanently relieved of field duty status, meaning he could not be required to perform manual labor or even stand or walk for prolonged periods.

For some reason, Stevenson's duty status was later revoked, and he was required to return to work in the agricultural fields. The strain on his ankle caused one of the screws to break, as revealed in a May 2006 x-ray. The broken screw caused pain and swelling. Stevenson was again relieved of field duty status, but he was not told about the broken screw.

In 2019, Stevenson's out-of-field status was revoked again, this time by defendant Dr. Randy Lavespere. In 2020, a second x-ray revealed another broken screw in Stevenson's ankle. Again, Stevenson was not told. But his ankle continued to cause him "tremendous pain" and "daily pain and torment" and affected his ability to walk normally, causing secondary injuries. He complained continually and requested a change in duty status to relieve him of work in the fields. But "[w]ithout knowledge of the broken screws," Stevenson alleges, he "did not know to ask for their surgical removal or repair."

2

In April 2021, Stevenson saw another prison physician for a rash on his face. He also complained about his ankle, so the physician reviewed Stevenson's records and found the 2006 and 2020 x-rays. Stevenson was finally informed about the broken screws.

Several months later, Dr. Ronald Sylvest, an orthopedic specialist at the prison, examined Stevenson. Sylvest made two recommendations. First, he suggested that Stevenson be seen by an orthopedic surgeon. He opined that the broken screws were the likely cause of Stevenson's severe ankle pain. He also suggested that Stevenson's duty status be changed to relieve him from field work. He gave Stevenson a brace to stabilize his ankle until it could be evaluated by a surgeon.

An x-ray taken in September 2021—ordered by Lavespere and approved by defendant Dr. Paul M. Tocé—revealed that the broken screws had "complicated" Stevenson's ankle injury.

On March 11, 2022, Stevenson reported severe nerve pain and was examined in the prison clinic. Ten days later, an orthopedic specialist examined Stevenson and prescribed heel stretches.

Stevenson alleges that Lavespere and Tocé (collectively, "the Defendants") were involved in his medical care. He alleges that both personally examined him for complaints about his ankle. Both allegedly knew about the screws and had the authority to refer him to someone qualified to repair them but did not. And both allegedly reviewed and declined his duty status requests.

Stevenson acknowledges he has received some medical care, but he claims it was either directed to other ailments, intended to be temporary, or plainly insufficient to treat the broken screws.

No. 23-30486

At the time he filed this case, Stevenson remained on a duty status that required him to labor in the fields despite his severe ankle pain. He had not been seen by a surgeon, and the screws had not been repaired.

### b. Procedural background

On July 13, 2022, Stevenson filed this lawsuit. He was not represented by an attorney at the time. He brought a single claim against the Defendants under 42 U.S.C. § 1983, alleging that they each violated his right under the Eighth Amendment to be free from cruel and unusual punishment.

There are two components to Stevenson's § 1983 claim. As to the first component, he alleges that the Defendants knew about the broken screws and fielded his complaints of severe pain but ignored the problem. Second, he claims that the Defendants knew that work in the fields was not appropriate for him given his injury but refused to reassign him. He seeks monetary relief and an injunction to force the Defendants to fix the screws and change his duty status.

The Defendants moved to dismiss Stevenson's case, arguing that the doctrine of qualified immunity protected them from liability. The magistrate judge granted Stevenson's request to file a combined response and amended complaint. But the magistrate judge declined to consider various medical records that the Defendants had filed along with their motion to dismiss.

The magistrate judge then recommended that the district judge deny the Defendants' motion. The district court accepted the recommendation over the Defendants' objections and denied the motion to dismiss. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a district court's denial of a motion to dismiss based on qualified immunity. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir.

2008). Our review is based only on the specific factual allegations of the complaint and all reasonable inferences that can be drawn from them. *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc). We are also required to construe liberally complaints filed by prisoners who are not represented by attorneys. *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

## III. DISCUSSION

The Defendants argue that Stevenson's allegations do not amount to an Eighth Amendment violation. But even assuming they do, the Defendants argue, governing law did not give officials fair warning that those actions were unlawful, and therefore, qualified immunity applies.

Stevenson tries to rebut those arguments and also argues that we lack power to consider the appeal. He contends our jurisdiction is limited to whether the district court correctly applied the law when it denied qualified immunity. But the Defendants' challenge, he argues, is not to the district court's legal analysis but to the veracity of Stevenson's allegations.[1]

### a. Appellate jurisdiction

We must resolve challenges to our jurisdiction first. *Daves v. Dallas Cnty.*, 64 F.4th 616, 621 (5th Cir. 2023) (en banc). A court's jurisdiction is its power to hear a case. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). We have the power to review a district court's denial of qualified immunity at the motion to dismiss stage. *Armstrong v. Ashley*, 918 F.3d 419, 422 (5th Cir. 2019). But at this early stage, we are restricted to determining "'whether the facts pleaded establish' 'a violation of clearly-established

---

[1] Stevenson also argues that recent scholarship undermines the foundation of Supreme Court precedent requiring the application of the qualified immunity doctrine to claims under 42 U.S.C. § 1983. Whatever the merits of Stevenson's argument, we do not reach them. The Supreme Court alone has "the prerogative of overruling its own decisions." *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023).

law.'" *Ramirez v. Escajeda*, 921 F.3d 497, 501 (5th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 673 (2009)). In other words, a proper appeal asks us "whether the district court erred in concluding as a matter of law that officials are not entitled to [qualified immunity] on a given set of facts." *Id.* at 499 (citation omitted).

Stevenson contends that we lack jurisdiction over the appeal because the Defendants predicate all of their arguments on disputed facts. We find the contention overly broad. Most of the Defendants' arguments are in fact confined to the "given set of facts" before the magistrate judge— Stevenson's complaint, amended complaint, and exhibits. *See* FED. R. CIV. P. 10(c). The Defendants' arguments based on purported factual inconsistencies or deficits within the four corners of the complaint are legal in nature; they challenge whether, *as a matter of law*, the complaint shows a violation of Stevenson's rights. *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016).

But we agree that one section of the Defendants' appellate brief raises arguments based on facts not in the pleadings. They center on twenty-three documents that the Defendants argue are part of Stevenson's medical records. The documents were apparently referenced by the pleadings but not actually attached to them as exhibits.

As the Defendants concede, the magistrate judge had the discretion not to consider the twenty-three documents and did not consider them. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000) (explaining court may consider documents referenced in, but not attached to, complaint if documents "assist[] the plaintiff in establishing the basis of the suit"). Because the magistrate judge did not consider the documents, they did not bear on the district court's legal determination. The facts contained only in those documents are not part of the "given set of facts" before us.

No. 23-30486

*Ramirez*, 921 F.3d at 499. We lack jurisdiction to review arguments based on them.

**b. Qualified immunity**

Federal law, codified at 42 U.S.C. § 1983, creates a legal claim for individuals whose rights are violated by state officials. In response, officials may raise the defense of qualified immunity. *Cooper*, 844 F.3d at 522. If they do, the plaintiff must make two showings. *Id.* First, he must show that he adequately alleged that his rights were violated. *Id.* Second, he must show that, at the time his rights were violated, legal precedent clearly established the officials' actions as unlawful. *Id.*

*i. Eighth Amendment violation*

Stevenson's claims are based on the Eighth Amendment. The Eighth Amendment protects individuals convicted of crimes from cruel and unusual punishment. One facet of that protection is that prison officials must "ensure that inmates receive adequate . . . medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

To succeed on a § 1983 claim based on a violation of that duty, a prisoner must show that the officials acted with deliberate indifference. *Id.* at 834. That means the official "knows of and disregards an excessive risk to [the prisoner's] health or safety." *Id.* at 837. The prisoner must do more than express dissatisfaction with his treatment. *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006). He must allege that officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* (quoting *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (internal quotations omitted)).

Moreover, the prisoner's medical need must be "serious"—meaning either treatment has been recommended, or the need for treatment is "so

7

apparent that even laymen would recognize" it. *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006).

Thus, Stevenson needed to allege facts that reasonably lead to the conclusion that the Defendants knew of an excessive risk that Stevenson would suffer severe pain if they failed to act, and they still chose not to act. *See Domino*, 239 F.3d at 755. We start with his claim that the Defendants refused to treat him for the broken screws. He alleges that the broken screws caused him great pain and torment. He alleges the Defendants were each responsible for his medical care yet "allow[ed] [him] to suffer indefinitely . . . and refus[ed] to provide any treatment for the broken screws." He also alleges that the Defendants ignored a direct medical recommendation that Stevenson be examined by a surgeon.

The Defendants principally argue that Stevenson's own allegations establish that they *did* treat Stevenson, and that he is just dissatisfied with the treatment. They point to several types of treatment that Stevenson admits, in the operative complaint, to having received—specifically, medication; a low-sodium diet; TED hose (a type of compression sock); heel stretches; and an ankle brace.

But Stevenson specifically alleges that those treatments were not intended to fix the broken screws. He alleges that the medication and diet were for high blood pressure. He alleges that the TED hose was for venous insufficiency. He alleges that the heel stretches were for a heel spur. He alleges that the brace he received from Sylvest was meant to temporarily stabilize his ankle pending surgery, not as a permanent fix. Those plausible factual allegations establish, for pleading purposes, that the Defendants never provided treatment for the broken screws. *See Iqbal*, 556 U.S. at 679.

The Defendants next argue that a letter attached to the amended complaint contradicts Stevenson's allegation that Sylvest recommended

surgery. Tocé wrote the letter to Stevenson nearly a month after Stevenson filed this case. He wrote that Sylvest recommended the ankle brace and heel stretches as treatment and did *not* recommend consultation with a surgeon.

If an exhibit to a complaint contradicts an allegation in the complaint, the exhibit controls. *Sligh v. City of Conroe*, 87 F.4th 290, 298 (5th Cir. 2023). But we find no contradiction. Stevenson's attachment of the letter merely acknowledges that *Tocé* claims that Sylvest did not recommend surgery. But there is no evidence from *Sylvest* himself indicating that he never recommended consultation with a surgeon.

Even if Sylvest never recommended surgery, we would not find that fatal to Stevenson's claim at this stage. Deliberate indifference does not require a showing that officials disregarded a recommendation if the medical need was "so apparent that even laymen would recognize that care is required." *Gobert*, 463 F.3d at 345 n.12. We think, drawing on "judicial experience and common sense," *Iqbal*, 556 U.S. at 679, that a layperson could see that a brace and heel stretches cannot fix broken ankle screws.

Next, Stevenson alleges that the Defendants denied his duty status requests despite knowing that keeping him in the fields would inflict unnecessary pain and risk further damage to his ankle. We have said that an official violates a prisoner's Eighth Amendment rights if he requires the prisoner to do work that he "kn[o]w[s] w[ill] significantly aggravate [the prisoner's] serious physical ailment." *Jackson*, 864 F.2d at 1246; *see also Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002). Stevenson's allegations satisfy that standard.

Contrary to the Defendants' argument, we do not find *Winston v. Stacks*, 243 F. App'x 805 (5th Cir. 2007) to counsel otherwise. There, a plaintiff's Eighth Amendment claim based on working conditions failed because he had not alleged that his work assignment aggravated his medical

condition or otherwise caused him any harm. *Id.* at 806. Stevenson alleges that labor in the fields is *what caused* the screws to break—first in 2006 and again in 2020, after Lavespere himself returned Stevenson to field duty—and that, thereafter, the work caused him severe pain. Those allegations distinguish Stevenson's claims from *Winston*.

In sum, Stevenson sufficiently alleged that the Defendants violated his right to receive adequate medical care in prison.

### ii. Clearly established

Next, Stevenson must demonstrate that the violation of his rights was "clearly established." *Cooper*, 844 F.3d at 522. He must "point this court to a legislative directive or case precedent that is sufficiently clear such that every reasonable official would have understood that what he is doing violates that law." *Keller v. Fleming*, 952 F.3d 216, 225 (5th Cir. 2020). Qualified immunity will not be granted if, in light of that precedent, "[a]ny reasonable person in [the Defendants'] position would have known that ignoring [Stevenson's] complaints . . . would be a violation of his rights under the Eighth Amendment." *Rodrigue v. Grayson*, 557 F. App'x 341, 347 (5th Cir. 2014) (citing *Gobert*, 463 F.3d at 346).

The Defendants argue that Stevenson failed to identify any "cases that require [a prisoner] to be referred to an outside surgeon rather than the orthopedic specialist" or that entitle a prisoner to "the duty status [he] prefers."

The Supreme Court has instructed courts to not "define clearly established law at a high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). Rather, precedent must speak to "the violative nature of [the] particular conduct" and "the specific context of the case." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (emphasis omitted). That means plaintiffs must point to "similar circumstances" rather than "generalized proposition[s]" to

show that caselaw established particular conduct as unlawful. *Rogers v. Jarrett*, 63 F.4th 971, 977 (5th Cir. 2023).

Still, the Defendants' framing is too narrow. A plaintiff need not show that "*the very action in question* has previously been held unlawful." *Easter*, 467 F.3d at 465 (emphasis added) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The test is whether every reasonable official would know that their actions are unconstitutional. *Villarreal v. City of Laredo*, 94 F.4th 374, 395 (5th Cir. 2024) (en banc). At the end of the day, "[t]he *sine qua non* of the clearly-established inquiry is 'fair warning.'" *Morgan*, 659 F.3d at 372 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). To require Stevenson to produce cases about broken surgical screws or orthopedic surgeons is more than necessary for fair warning.

There are cases enough establishing the Defendants' alleged acts as clearly unconstitutional. In *Easter v. Powell*, a prison nurse knew the plaintiff had a history of cardiac problems. 467 F.3d at 464. But when he reported severe chest pain, she first directed him to the pharmacy, and when she learned it was closed, she sent him back to his cell. *Id.* at 463–64. The nurse's plainly ineffective "treatment" was tantamount to turning a deaf ear. *Id.* at 464. And, we stated plainly, "the law [is] clearly established that a prison inmate [can] demonstrate an Eighth Amendment violation by showing that a prison official 'refused to treat him . . . [or] ignored his complaints.'" *Id.* (quoting *Domino*, 239 F.3d at 756).

In *Carlucci v. Chapa*, a dentist recommended that a prisoner's fractured teeth be repaired. 884 F.3d 534, 536–37 (5th Cir. 2018). In the meantime, the dentist gave the prisoner a bite guard to avoid further damage. *Id.* at 537. Ultimately, and despite the prisoner's repeated requests, prison officials never saw to it that the prisoner's teeth were repaired. *Id.* As a result, he experienced extreme pain and further dental damage. *Id.* at 539. We

concluded that the officials' inaction constituted deliberate indifference. *Id.* And again, we made the rule clear: "[t]he denial of recommended medical treatment is . . . sufficient to show deliberate indifference." *Id.* at 538.

These cases gave the Defendants fair warning. They should have known from *Easter* that they had a duty to try to provide *effective* treatment for the broken screws. They should have known from *Carlucci* that they could not ignore a medical recommendation or rely on a temporary solution that is clearly insufficient to meet their patient's need.

The Defendants say these cases do not tell them "what measures [they] were required to take once they learned of the broken screws." We disagree. The cases provide an answer that should have been obvious: fix the screws.

As for Stevenson's duty status claim, we look to *Jackson v. Cain.* There, a prisoner brought an Eighth Amendment claim based on work duties he claimed were "inappropriate to his medical condition." 864 F.2d at 1246. He specifically alleged that officials knew he suffered from syphilis and knew that exposure to sunlight would hinder his treatment but still forced him to work in the sun. *Id.* at 1239, 1246–47. We concluded that those allegations amounted to deliberate indifference.

Stevenson's medical condition is different, but his circumstances are essentially the same. He alleges that the Defendants knew of the broken screws and knew that field labor was likely to worsen his condition and cause him severe pain but still forced him to do it. *Jackson* clearly established that such circumstances, if proven true, violate the Eighth Amendment. *Id.* at 1244, 1246; *see also Calhoun*, 312 F.3d at 734–35 (finding a claim for deliberate indifference where a prison official purportedly knew of an inmate's medical work restrictions, yet forced him to work far beyond those limitations).

No. 23-30486

Consequently, Stevenson has sufficiently alleged that the Defendants violated his Eighth Amendment rights through actions that, at the time, were clearly established as unconstitutional.

Stevenson has satisfied both prongs of the qualified immunity test. The district court did not err in denying the Defendants' motion to dismiss.

## IV. CONCLUSION

We AFFIRM.